IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES THOMAS, JR., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:20-cv-01457-JMG |
| | : | |
| JUSTIN LIGUORI *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                                           July 13, 2022

**I.    OVERVIEW**

This is a civil rights action between Plaintiff Charles Thomas, Jr., the City of Easton, and five City of Easton police officers. Plaintiff alleges he was subjected to an unlawful arrest and excessive force. He has filed charges under 42 U.S.C. Section 1983 against the city and the officers. Before the Court is Defendants' Motion for Summary Judgment. For the reasons that follow, the Court grants the Motion in part and denies it in part.

**II.   BACKGROUND**

On March 17, 2018, at approximately 2:30 a.m., Plaintiff had a physical encounter with several City of Easton police officers at a local WAWA convenience store. Plaintiff's Statement of Facts ¶¶ 17, 21, ECF No. 69-3 ("PSOF"); Defendants' Statement of Facts ¶¶ 17, 19-27, ECF No. 66 ("DSOF"). During the encounter, Plaintiff sustained serious injuries that required emergency medical treatment. PSOF ¶¶ 35, 37-38; DSOF ¶¶ 37-40. The police officers state that none of them saw how Plaintiff got injured but they surmise he hit his head on the brick wall of the WAWA. DSOF ¶ 30. Plaintiff has no recollection of the incident. PSOF ¶ 46, 48; DSOF ¶ 48.

WAWA has no surveillance camera that indicated how Plaintiff's injuries occurred and no witnesses to the incident could be located. PSOF ¶¶ 52, 53; DSOF ¶¶ 52, 53.

Plaintiff was subsequently charged criminally and found guilty of resisting arrest, disorderly conduct, and public drunkenness by a judge and jury at the Northampton County Court of Common Pleas. Second Amended Complaint ¶ 42, ECF No. 60 ("Complaint"). Plaintiff appealed to the Superior Court of Pennsylvania which vacated his convictions concluding "the officers lacked probable cause to arrest [Plaintiff]," and "the evidence was insufficient to support all the crimes charged and tried." Complaint ¶ 45; *Commonwealth v. Thomas,* 8-9, No. 931 EDA 2020 (Pa. Sup. Ct. July 28, 2021).

Based on these events, Plaintiff filed a Section 1983 Complaint. Defendants move for summary judgment.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). "We view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id.* (internal quotation marks and citation omitted).

The party moving for summary judgment must first "identify [] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015).

## IV. DISCUSSION

Plaintiff claims his constitutional rights were violated by the City of Easton and five City of Easton police officers. He brings Section 1983 claims under four theories – "excessive force," "false arrest," "malicious prosecution," and "municipal liability." Complaint ¶¶ 51-79. He also alleges assault and battery under state law. *Id.*

### A. Section 1983 Claims

"Section 1983 provides a cause of action against any person acting under color of state law who subjects a person or causes a person to be subjected ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Vega v. Tekoh*, No. 21-499, 2022 WL 2251304, at *4 (U.S. June 23, 2022). "To state a claim under Section 1983, a plaintiff must demonstrate that some person has deprived him of a federal right ... and that the person who deprived him of that right acted under color of state or territorial law." *Halsey v. Pfeiffer,* 750 F.3d 273, 290 (3d Cir. 2014).

#### 1. Excessive Force

Plaintiff first claims he was subjected to excessive force by the City of Easton Police Officers Liguori, Cornelius, and Lollis. Complaint ¶¶ 51-56.

"Police officers are privileged to commit battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force." *Groman v. Twp. Of Manalapan*, 47 F.3d 628, 634 (3d. Cir. 1995). Under Section 1983, the use of excessive force to effect an arrest violates a suspect's Fourth Amendment rights and must be judged by reference to the Fourth Amendment's "reasonableness" standard. *See Graham v. Connor,* 490 U.S. 386, 395–96 (1989). Under this standard, the officers' actions must be "objectively reasonable" considering the facts and circumstances confronting them.[1] *Id.; see also Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013).

Defendants argue they used reasonable force against Plaintiff and were "merely trying to restrain Plaintiff for their safety as well as his own." Brief in Support of Motion for Summary Judgment 17, ECF No. 66 ("MSJ"). But, they argue, this Court need not reach that determination because their version of the incident is uncontradicted - as Plaintiff has no memory of the incident and no video or witnesses exist. MSJ 17; DSOF ¶¶ 52, 53. However, Plaintiff brings evidence. The paramedic on the scene reported, during his treatment of Plaintiff, "the moment Plaintiff regained consciousness [during transport] he said the 'police did this to me - the police assaulted me.'"[2] PSOF § 41; Paramedic/EMT Report, JA001070, JA001072, ECF No. 67-8 Exh. 28 ("Par./EMT.

---

[1] To make that determination, courts look to a number of factors including: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others; (3) whether he is actively resisting arrest or attempting to evade arrest; (4) the duration of the action; (5) whether the action takes place in the context of effecting an arrest; (6) the possibility that the suspect might be armed, and; (7) the number of persons with whom the officer must contend at one time. *See Tennessee v. Garner,* 471 U.S. 1, 7, 22 (1985); *see also Graham v. Connor*, 490 U.S. at 396; *Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir. 1997).

[2] Plaintiff raised this issue in his Statement of Undisputed Facts. PSOF §§ 39, 41. Defendants raised no objection to admissibility and the Court sees a potential path to admissibility, including as an "excited utterance" or "statement made for medical diagnosis." *See* FRE R. 803(2), 803(4)(A).

4

Report"). The paramedic also reported he found it "very odd that … all of the Easton police officers refused to answer any of my questions." PSOF ¶ 39; Par/EMT Report J001069. Plaintiff's expert witness, Dr. McRae, also contends that Plaintiff's injuries did not happen as described by the officers. Dr. McRae's Report 12-15, ECF No. 67-6 – Exh. 27. Additionally, Plaintiff alleges that the officers each gave conflicting accounts of the incident in their depositions and court testimonies. *Id.* at ¶ 46.

Considering the injuries suffered by Plaintiff, the statements of the attending paramedic, Plaintiff's expert witness's contentions, and the alleged conflicting reports of the police officers, and taking Plaintiff's facts in the light most favorable to him, as we must, the Court finds enough of a factual dispute to survive summary judgment on Plaintiff's excessive force claim.

   **2.    False Arrest**

Plaintiff next claims he was subject to false arrest by Officers Liguori, Cornelius, and Lollis. Complaint ¶¶ 65-69. "To assess claims of false arrest, the court must determine whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017). The test for an arrest without probable cause is objective, based on whether the facts and circumstances available to the officers at the moment of arrest were enough to warrant a reasonable person to believe that the plaintiff had committed or was committing an offense. *See Snell v. City of York*, 564 F.3d 659, 671 (3d Cir. 2009). Further, the Fourth Amendment is a limitation upon police conduct even if the officers stop short of a "technical arrest" and their action does not culminate in an "arrest" in traditional terminology. *See Terry v. Ohio,* 392 U.S. 1, 19 (1968). "Whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person." *Id.* at 16.

Defendants argue there was no "arrest" and, even if there was, they had probable cause for the arrest. MSJ 6, 10-11. They contend "the prosecutor's office, the magisterial district judge, and the criminal court judge all agreed with [their] conclusion that there was probable cause to file charges." [3] *Id.* at 11. Plaintiff argues the opposite, maintaining he was arrested - i.e., he was "seized" and prevented from walking away. Plaintiff's Memo in Opposition to Defendants' Motion for Summary Judgment 11, ECF No. 69-2 ("Memo"). He contends that "the officers testified during their depositions and the entire criminal trial that their intent was to arrest him," and were thwarted "only because he had to be transported by ambulance to the hospital."[4] Memo 3, 11. Plaintiff maintains the finding of probable cause in the earlier criminal case was not based on the totality of evidence the Superior Court later used to vacate his criminal charges. Memo 3-5. Additionally, he notes the paramedic on the scene reported that Plaintiff cried out multiple times during transport to the hospital "the police assaulted me." PSOF §41.

Considering the foregoing, and taking the facts in the light most favorable to Plaintiff, there exists sufficient factual dispute to send to the factfinder the question of whether Plaintiff was arrested and the cause supporting such arrest.

---

[3] *See Commonwealth v. Thomas*, CP-48-CR-01855-2018 (N.C.C.P. March 11, 2020).
[4] *See* Liguori Depo. Exh. 7 JA000080 71:17-19 ECF No. 67-2 ("So, at that time, I decided to make an arrest and I wanted to put him in handcuffs, take him into custody."); "He was told he was under arrest and to put his hands behind his back." *Commonwealth v. Thomas*, 931 EDA 2020 at * 3 (Pa. Super. Ct. July 28, 2021) (quoting Officer Liguori trial testimony.).

### 3. Malicious Prosecution

Plaintiff next brings a malicious prosecution claim against Officers Liguori, Cornelius, Lollis, Ocetnik, and Herncane. Complaint ¶¶ 70-75. "To prevail in a Section 1983 malicious prosecution action, a plaintiff must show: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *DiBella v. Borough of Beachwood,* 407 F.3d 599, 601 (3d Cir. 2005) citing *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003). Defendants challenge prongs one, three, and five. MSJ 13-14.

First, Defendants argue Officers Cornelius, Lollis, Ocetnik, and Herncane did not personally take part in initiating a criminal proceeding against Plaintiff. *Id.* at 13. The defendant(s) on a malicious prosecution claim must have personally initiated criminal proceedings against the plaintiff. *See Piazza v. Lakkis*, 2012 WL 2007112, at *12 (M.D. Pa. 2012).

Officers Cornelius, Lollis, Ocetnik, and Herncane did not initiate criminal proceedings against Plaintiff. *See* Police Cr. Compl. JA 00128-JA001287, ECF No. 67-7 Exh. 31. Indeed, Plaintiff concedes that only Officer Liguori signed the original Affidavit for the Criminal Complaint. Memo 10. Accordingly, the Court will grant summary judgment to Officers Cornelius, Lollis, Ocetnik, and Herncane on the malicious prosecution claim. *See Bishop v. Upper Darby Police Dep't*, No. 15-CV-6069, 2021 WL 4818272, at *8 (E.D. Pa. Oct. 14, 2021) (Summary judgment was granted to the three defendants who did not initiate criminal proceedings against Plaintiff.).

Next, regarding prong three and the issue of probable cause, Defendants again maintain Officer Liguori had probable cause to initiate the criminal proceeding. MSJ 10. And Plaintiff again counters, "the finding [of the criminal court] was not based on the totality of the evidence" and, "more importantly, the Superior Court opinion nullifies [those trial] findings."[5] Memo 5.

Similarly, regarding prong five, Defendants again contend Plaintiff did not suffer a deprivation of liberty because he was not arrested and never imprisoned. MSJ 15. Plaintiff counters that although he was not officially arrested, he was seized as per the testimony of three officers and denied his liberty by being subjected to restrictive pretrial conditions, urine sampling, and three years of monitoring. Memo 11.

As with the challenge to the false arrest claim, the Courts finds there is a material factual dispute as to probable cause to arrest. Further, because "pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure," there is sufficient evidence to move forward with Plaintiff's claim of malicious prosecution and summary judgment will be denied on this claim as to Officer Liguori. *See DiBella v. Borough of Beachwood,* 407 F.3d 599, 603 (3d Cir. 2005).

4.  **Municipal Liability**

Plaintiff next asserts a Section 1983 claim against the City of Easton for municipal liability. Complaint ¶¶ 76-79. A claim of municipal liability under Section 1983 may proceed in two ways - a plaintiff may allege that: (1) a municipality's unconstitutional policy or custom led to his or her

---

[5]  *See Commonwealth v. Thomas*, 931 EDA 2020 at *9 (Pa. Super. Ct. July 28, 2021) ("Therefore, Appellant was subjected to an unlawful arrest and his conviction for resisting arrest cannot stand. Appellant therefore is entitled to have his convictions for both disorderly conduct and resisting arrest vacated.").

injuries and/or that; (2) a municipality failed to supervise, train, or discipline their employee(s) and said failure amounts to deliberate indifference to the constitutional rights of those affected. *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).

Plaintiff appears to be pursuing both avenues. First, he alleges the "City of Easton failed to develop or developed policies or procedures with total disregard to Plaintiff's rights." Complaint ¶ 77. Second, he alleges the City of Easton's failure to properly train and supervise the individual officers has promoted a conscious disregard for the use of police powers. *Id.* at ¶ 78.

When a municipality is sued under Section 1983, the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). The policy or custom need not be an express rule, rather, it is sufficient for a plaintiff to show that the discriminatory conduct is so persistent and widespread, so permanent and well settled, as to constitute a custom or usage with the force of law. *See Spruill v. School District of Phila.* 569 F. Supp 3d 253, 263 (E.D. Pa. 2021). Further, it is generally held that a single incident involving the use of excessive force by a police officer is insufficient to support a finding of an unconstitutional municipal policy or custom. *See City of Oklahoma v. Tuttle*, 471 U.S. 808, 841 (1985); *see also Lawson v. City of Phila.* 2018 WL 925012 at * 4 (E.D. Pa. Feb. 16, 2018). The "single incident" rule also applies when liability is premised on failure to train or discipline. *Id.*

Defendants maintain that "Plaintiff's assertions . . . fall far short of the evidence required to support his Monell claim against the city." MTD 24. The Court agrees. Plaintiff fails to cite any specific relevant evidence to support his claim. For example, to support his first policy claim, he points to the Internal Investigation Report conducted by Officer Herncane which notes the "actions taken were within the guidelines." Memo 17. He uses the roundabout logic that because the Chief

of Police signed off on the report, and the report included *alleged* excessive force – the City's official policy must be to allow excessive force. *Id.* Additionally, Plaintiff makes no mention of any evidence to support his false arrest or malicious prosecution claims against the city. Further, if Plaintiff is trying to prove a pervasive custom or usage of excessive force, false arrest, or malicious imprisonment, he fails there as well by pointing only to the current incident.

Plaintiff then argues that the City's failure to discipline the officers after the Superior Court vacated his charges demonstrates deliberate indifference and "systemic failure." Memo 21. This argument fares no better. Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *See Bd. of Cty. Comm'rs. of Bryan Cty. Okl.,* 520 U.S. at 410. Failure to adequately screen, train [or discipline] municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations. *Id.*; *see also Berg v. Cnty. of Allegheny,* 219 F.3d 261, 276 (3d Cir. 2000). Also, for a municipality to be liable, "the identified deficiency in a training[, supervision, or discipline] program must be closely related to the ultimate injury, which means the plaintiff must prove that the deficiency in training[, supervision, or discipline] actually caused the constitutional violation at issue." *Logan v. Bd. of Educ. of the Sch. Dist. of Pittsburgh*, 742 F. App'x 628, 633 (3d Cir. 2018) (citing *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011)).

Given this stringent standard of fault, Plaintiff does not proffer sufficient evidence to support a *Monell* failure to discipline claim. First, Plaintiff does not provide evidence supporting his conclusory allegation that a deficiency existed. Further, although Plaintiff speaks of faulty "department procedure" and "systemic failure," he presents no evidence of any prior disciplinary infractions of the involved officers or any other officers. Additionally, Plaintiff has not alleged a specific relevant fact to show this deficiency actually caused the constitutional violations at issue.

Accordingly, Plaintiff has failed to identify record evidence that could allow a reasonable jury to find in his favor on the municipal liability theory. Therefore, the theory of Monell liability fails and summary judgement will be granted for Plaintiff's municipal liability claim.

### 5. Qualified Immunity

Defendants maintain that "at a minimum, they are entitled to qualified immunity." MTD 18. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards,* 566 U.S. 658, 664 (2012). As an affirmative defense, the burden of establishing qualified immunity falls on the official claiming it. *See Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011). In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry: (1) whether the facts, taken in the light most favorable to the nonmoving party show the officer's conduct violated a federal right and (2) whether the right in question was clearly established at the time of the violation. *See Tolan v. Cotton,* 572 U.S. 650, 655-656 (2014). Courts are free to address the two elements in whichever order they deem appropriate. *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014).

Defendants argue they are entitled to qualified immunity because, among other things, "Plaintiff has no evidence to suggest [the officers] used any force, other than the force to try to restrain Plaintiff, or that [the officers] intentionally caused [Plaintiff's] head to make contact with the corner of the brick wall." MSJ 21. But, as discussed, Plaintiff does present evidence sufficient at this stage to dispute Defendants' version of events, including the paramedic's report that Plaintiff exclaimed multiple times he was assaulted by the officers, and his expert witness's report that additional force was required to produce Plaintiff's head injury. The Court must accept this

evidence as true. This undermines Defendants' qualified immunity argument and prevents the Court from making a determination on qualified immunity at this stage of the proceeding

### 6. Official Immunity on the State Law Claims

Finally, Defendants maintain they should be granted official immunity for Plaintiff's state claims of assault and battery. MSJ 26. State officials are granted official immunity under 42 Pa.C.S.A §§ 8501–8564. Under Pennsylvania law, Plaintiff is subject to substantially the same level of protection as under federal law. *See DeVatt v. Lohenitz,* 338 F. Supp. 2d 588, 598 (E.D. Pa. 2004).

In order to be protected by official immunity the claim asserted must arise from or be reasonably related to the duties of the employee, the actions must not constitute a crime, fraud, malice, or willful misconduct, and the conduct of the employee must be authorized by law, or the official reasonably believed the conduct was authorized by law, or the act of the employee was within the policy making discretion granted to that employee. Pa. C.S.A. § 8546; *see also Devatt,* 338 F. Supp. 2d at 599-600.

Defendants argue they are entitled to official immunity because "there is no evidence they committed a crime, acted with malice, or engaged in willful misconduct." MSJ 28. However, as discussed above, Plaintiff does present evidence to dispute Defendants' version of events, including his expert witness's statements and the attending paramedic's report.

Again, we must accept this evidence as true. And, again, this undermines Defendants' official immunity argument and prevents the Court from deciding on official immunity on the state law claims at this stage of the proceedings.

### 7. State Law Claims

Although Defendants do not present a specific argument pertaining to Plaintiff's state law claims, outside of their request for official immunity, the Court shall briefly review these claims in the interest of completeness.

Plaintiff brings the state law claims of assault and battery against Defendants. Complaint ¶¶ 57-64. Although "[a] police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty," he nevertheless "may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive." *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (Pa. 1994). "The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Id.*; *see also Boyden v. Twp. of Upper Darby*, 5 F. Supp.3d 731, 744 (E.D. Pa. 2014).

The Court has already concluded that a reasonable factfinder could conclude that Defendants' use of force was objectively unreasonable based on Plaintiff's expert witness's contentions, the statements of the attending paramedic, and the alleged conflicting reports of the police officers.

Accordingly, summary judgment will be denied for the state law claims of assault and battery.

## V. CONCLUSION

For the foregoing reasons, we deny Defendants' motion for summary judgment for Counts One, Two, Three, and Four of Plaintiff's Second Amended Complaint. We also deny summary judgment for Count Five as to Officer Liguori.

We grant Defendants' motion for summary judgment for Count Six of Plaintiff's Second Amended Complaint and for Count Five as to Officers Cornelius, Lollis, Ocetnik, and Herncane. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge